(h)   When job conditions or economic consideration warrant other hours of starting time may be established by *mutual agreement between the Employer and the Union.  With respect to asphalt paving and concrete paving, the starting time of work shall be mutually agreed to fit the job conditions.*

## ARTICLE V
## HOLIDAYS

(a)   Any regular employee on the Seniority list as defined in Article VII shall be paid a regular day's pay although he does not work for the following Legal Holidays, provided he has worked at least one (1) day in the calendar week in which the Holiday falls, and signifies his willingness to work the Holiday; or is on vacation during the week in which the Holiday falls and would have been working, but for the fact that he was on vacation. Provided further, no employer subject to this contract shall be required to allow more than one (1) employee, in accordance with seniority, to this vacation in any Holiday week.

New Years Day, Presidents' Day, Memorial Day, Independence Day, V-J Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day and Christmas Day.

If during the life of this agreement any of the current legal holidays should be deleted by law, the employees shall substitute another mutually agreeable day as their holiday.

(b)   The calendar Week shall be Sunday to Saturday, both inclusive.

(c)   When the employee is required to work on one of the above holidays, he shall be paid in addition to his holiday pay, two (2) *times his straight time rate for all work that he may perform on that day, except that he shall be paid three (3) times his straight time rate for all hours worked over eight (8) hours.*

(d)   All other holidays shall be paid at the regular rates.

(e)   The holiday pay shall not be by separate check.

## ARTICLE VI
## STEWARDS

(a)   An employee of the Employer may be designated by the Union to act as Steward and he shall be the last employee to be laid off irrespective of seniority including Saturday and Sunday.

(b)   The rate of pay for Steward shall be according to the highest classification working on the job, or out of the main garage at the time, excluding Low Bed and I Beam Trailers, or if the Steward does not desire to operate equipment carrying the highest rate.

(c)   In the event that the Employer's operations are transferred from the jurisdiction of one Local Union to the jurisdiction of another Local Union, the local in whose area the work is being performed will appoint a member of its local, who will be employed as a working Steward for the duration of the operation. Upon termination of the operation, he shall resume his normal position on the seniority list.

(d)   No Steward shall have the authority to call a strike, cause a slowdown or take *any other action which* would interrupt the Employer's business, except as such action may be authorized by the Union. The Employer recognizes this limitation upon the authority of the Steward.

(e)   When a Steward is appointed under Paragraph C, the Union reserves the right to remove him and replace him with a man qualified to operate equipment on the job.

(f)   *Stewards can use the Company phone for union business at any time.* The steward can process or investigate any dispute or grievance pertaining to company business during working hours without loss of pay.

(g)   No employee shall be required to meet privately with Company officials relating to possible discharge

-4-

without Union Representation present. If the Business Agent for Local No. 251 is unable to attend, or the Union Steward is absent from work, the employee shall have the right to select any union employee who is available to accompany him at any such meeting.

## ARTICLE VII
## SENIORITY

(a) Seniority rights for employees shall prevail. All new employees shall be hired on a sixty (60) days trial basis and shall work under the provisions of this Agreement, within which time they may be dismissed without protest by the Union. After working sixty (60) days in a calendar year, they shall be placed on the Seniority List as a regular employee in accordance with their date of hire.

(b) In the event of lay-off, the most junior employees shall be the first to be laid off, and rehiring shall be in the inverse order. The employer upon a request made by the Union shall furnish a seniority list of the employees covered by this Agreement.

(c) An employee who has been laid off shall be given at least seven (7) days to report to the job when he is called back to work, without loss of benefits or rights. In the event the employee fails to report within the time specified, he shall lose any benefits and rights he might have with the Employer and a new employee may be hired. The union shall furnish temporary drivers, if requested to do so, until the named employee shall report for work.

(d) If there are any breakdowns or shut downs during the day, a man whose vehicle is broken down, or whose operation is shut down, shall go home for the completion of the work day; however the Employer may assign him to perform other duties. When a vehicle shall be out of service for more than that day, seniority shall prevail on the following day.

(e) Seniority shall be broken by discharge, voluntary quit, failure to report after seven (7) days notice as herein provided, or by a lay-off for lack of work, for twenty-four (24) consecutive months. Commencing with 5/1/91, any employee out of work due to proven illness, workmen's compensation or loss of license due to his employment for more than four (4) years shall be removed from the company Seniority List. This section shall not be retro-active but pertain to those employees out after 5/1/91.

(f) When the same Employer has more than one job in progress, working out of different garages or parking sites, and there is a lay-off of one or more men on any job and such lay-off exceeds one (1) working day, the employee shall at the expiration of one (1) day be entitled to transfer to another job of the Employer, if there are employees of less seniority working for the Employer on such other job.

Notwithstanding the foregoing, the Employer may permit a transfer immediately upon the lay-off without waiting one (1) day. An employee will have seniority preference to work within his own Local Union area provided he is qualified to operate the equipment available within the Local Union area.

(g) Union Official: An employee elected to any official position in the Union shall, upon completing his term of office, be restored to his former position without loss of seniority.

(h) When two (2) or more companies who are signatory to this Agreement merge their operations, the employees of the two (2) companies involved shall be dovetailed on the seniority list of the surviving company. When one company buys out another company, the employees of the company which was bought out will go to the bottom of the seniority list of the surviving company for seniority purposes only, but shall maintain years of service for vacation purposes.

## ARTICLE VIII
## TRANSFERS

When the Employer's equipment is moved from the jurisdiction of one local Union to the jurisdiction of another, the men employed shall be permitted to move the equipment.

ARTICLE IX
WAGES

(a)  The straight time wages for employees covered by this Agreement shall be those set forth in Schedule "A", attached hereto.

(b)  The said be shall effective as of May 1, 2000.

(c)  If an employee works on a higher paying piece of equipment for any part of the day, he will receive the higher rate of pay for the entire day

Any employee required to pull a Tag A Long trailer will be paid the next higher axle rate for the complete day

(d)  All employees shall receive their previous week's earnings no later than Friday at noon, unless circumstances occur beyond the control of the Employer, and all pay stubs shall include the hours worked, including premium time, and all itemized deductions shall be listed.

(e)  All drivers working on or hauling to/from a defined hazard material job site shall be paid a premium of $2.00 per hour over the applicable rate as defined in Schedule "A".

(f)  Stretch Trailer and Low Bed Trailer shall receive the same rate of pay.

ARTICLE X
VACATIONS

(a)  An employee who completes four (4) months or more, but less than one (1) year of service shall, on severance of his employment, be entitled to one-half day's pay at straight time rates for each month of his employment in which he has actually worked twelve (12) days. The number of days to which any employee shall be entitled shall not in any event exceed five (5) days.

(b)  An employee who has been on the payroll for one or more years, but less that five (5) years, shall each year, on the anniversary date of his employment be entitled to one week's vacation with pay, if he has actually worked one hundred ten (110) days during the last year of his employment. If he has worked less than one hundred ten (110) days, he shall receive one-half day's pay for each month in which he actually worked twelve (12) days or more, but not in excess of five (5) days in any year.

(c)  An employee who has been on the payroll for five (5) or more years, shall each year, on the anniversary date of his employment be entitled to two (2) weeks vacation with pay if he has actually worked one hundred ten (110) days during the last year of his employment. If he has worked less than one hundred ten (110) days, he shall receive one day's pay for each month in which he has actually worked twelve (12) days or more, but not in excess of ten (10) days in any year.

(d)  An employee who has been on the payroll for ten (10) or more years, shall each year, on the anniversary date of his employment, be entitled to three (3) weeks vacation with pay if he has actually worked one hundred ten (110) days during the last year of employment. If he has worked less than one hundred ten (110) days, he shall receive one and one-half day's pay for each month in which he has actually worked twelve (12) or more but not in excess of fifteen (15) days in any year.

(e)  No employee who has been on the payroll for a year or longer shall be entitled to a vacation hereunder until the expiration of one (1) year from the date on which he was entitled to his last vacation, except that in the case of termination of his employment, he shall be entitled to a prorated vacation, as set forth above. Vacation shall be taken when mutually agreeable to the Employer and employee.

(f)  Employees shall be (in accordance with Seniority) allowed their own selection of vacation weeks taken and vacation pays must be by separate checks at the current hourly rate of pay and must be paid to the employee on the previous pay day prior to the vacation week.

(g)     Employees who make the Seniority List after May 1, 1997 will have a maximum of two (2) weeks vacation after ten (10) years.

In the event that the Employer and the employee can not mutually agree as to the exact anniversary date, the Employer shall pay the vacation pay on or before July 1st each year.

In the event an employee's anniversary date for vacation pay becomes due while he is on lay-off, the Employer shall mail said vacation pay to the last known address of the affected employee.

## ARTICLE XI
## DISCHARGE

(a)     Any discharged employee may file a grievance no later than six (6) working days after discharge by a written notice submitted to the project manager or superintendent and the Local Union and such grievance shall be immediately processed in accordance with the steps of the grievance procedure.

(b)     Any employee whose services have been terminated must be paid in full for all wages owed him by the Employer, including earned vacation pay, if any as soon as possible, in no event later than the end of the second (2nd) business day following discharge for just cause.

(c)     No employee shall be dismissed without justifiable cause, and all discharges shall be in writing to the Local Union within two (2) days. Any written warning notices and/or suspension/discharge letters shall not remain in effect for a period of more than two (2) years from date of said notices/letters.

## ARTICLE XII
## UNION RIGHTS

(a)     Authorized agents of the Union shall have access to the Employer's establishment during working hours, including the right to check trucks in transit, investigate working conditions and collect dues for the purpose of determining whether or not the terms of this Agreement are being complied with, and provided however, that it will not unreasonably interfere with normal operations.

(b)     Pre-Job Conference: On all jobs in excess of $100,000.00 the Employer shall notify the Local Union in writing of the contract. Prior to the commencement of the work on the job, a pre-job conference shall be held within five (5) days unless otherwise mutually agreed upon by the Employer and the Local Union. Failure of the Employer to notify the Local Union shall entitle the Local Union to make claim for all work opportunity lost.

(c)     Section 1: Sanitation: Clean toilet and sanitary facilities shall be provided at each asphalt, concrete and gravel plant and maintained in compliance with the health and safety regulations of any governmental agency having jurisdiction.

Section 2: Lie Detector Test: The Company shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

## ARTICLE XIII
## LABOR DISPUTES

It shall not be a violation of this Agreement, nor shall it be cause for discharge, if any employee refuses to cross a picket line or make pickups, deliveries or service anyone or perform work for anyone where a labor dispute exists.

## ARTICLE XIV
## HIRING OF TRUCKS

(a)     The Employer agrees that he will hire equipment to supplement his own equipment only when he does not have the number or type of equipment required for his purpose; if it becomes necessary for the Employer to hire

said additional equipment under circumstances above, preference must be given in hiring such equipment from employers who have a contract with Local Union 251 or an owner/operator who is a dues paying member, in good standing, of Teamsters Local Union No. 251.

(b)     The Employer agrees that the wages, hours and working conditions provided for by this Agreement shall encompass the entire work covered by this agreement, thereby applying equally to any subcontracting let by the Employer on work covered by this Agreement. If any Employer shall subcontract work as herein defined, all employees of said subcontractor shall be paid directly by the Prime Contractor, except when such subcontractor is signatory to an agreement with the Local Union or when it is mutually agreed between the Employer and the Local Union or any locals thereof, that the subcontractor may establish his own payroll. Employees of a subcontractor whether or not paid directly by a prime contractor shall not acquire seniority with the prime contractor.

(c)     The term subcontract herein used shall include the hire of one or more trucks and shall also include delivery of bank run gravel and borrow to job sites.

(d)     In the event equipment is hired, the Employer shall require that the trucks be manned by its own employees or by employees of an Employer who is a party to the Heavy and Highway Agreement with this Local Union covering such work.

(e)     It shall be a violation of this Agreement for the signator to cause any trucker or person who pays lower wages, hours and working conditions that are provided for in this Agreement to haul sand, gravel, asphalt, stone, and ready mix concrete to or from a job site.

## ARTICLE XV
## EQUIPMENT

(a)     No employee shall be required to operate or work upon any vehicle that is not equipped with all safety appliances prescribed by law or which vehicle or its equipment is in defective condition. No employee shall be subject to disciplinary action for refusing to operate such equipment. Should the Employer, State and/or Federal Government require the use of any safety equipment wear or drug testing, it shall be provided without cost to the employees.

All equipment which is determined by the employer to be unsafe and not mechanically sound and proper shall be tagged so that it cannot be used by other drivers until the maintenance department has adjusted the complaint. After the equipment is repaired, the Employer shall place on such equipment an "OK" in a conspicuous place so the driver can see same.

Safety Equipment required by the employer and law shall be provided at no cost to the driver. Thereafter the driver will be responsible to keep and maintain the safety equipment in a responsible and prudent manner, considering normal wear and usage in the Industry.

(b)     The employee shall report all defects of equipment to the Employer on such forms or in such manner as the Employer may require. The Employer shall take immediate steps to correct any defects in equipment reported by any employee. Employees shall not be held responsible for vehicles not properly equipped to comply with State Motor Vehicle Laws, and shall be compensated for fines and time lost if summoned to court, etc. because of same.

(c)     Heaters, windows and mirrors will be supplied for winter use on the off-the-road equipment within a reasonable time after notification by the driver.

(d)     The Employer shall not require as a condition of employment, that an employee purchase truck, tractor, or tractor and trailer, or other vehicular equipment.

(e)     It shall be a violation of this Agreement to sell a truck or trucks to owner operators or any other company who is a signator or non-signator to this Agreement and thereafter within six (6) months rehire these same trucks to supplement the employer's equipment, with the purpose and intent of violating the terms and conditions of this contract.

ARTICLE XVI
SEVERAL LIABILITY

(a) The obligation of each Employer member of the Association shall be several and not joint.

(b) In the event any Employer who is a party hereto shall withdraw from the Association, notice thereof shall be given by the Association to the Union at least thirty (30) days prior to such withdrawal. The terms of this Agreement shall be binding upon any Employer who withdraws from the Association.

ARTICLE XVII
INVALIDITY OF PROVISION

If any Article or Section of this contract or of any Riders thereto should be held invalid by operation of law or by any tribunal or competent jurisdiction or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this and/or any rider thereto or the application of such Article or Section to person or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement has been restrained, shall not be affected thereby. In the event that any Article or Section is held invalid or enforcement of or compliance with which has been restrained as above set forth, the parties affected thereby shall enter into immediate collective bargaining negotiations upon the request of either party or both, for the purpose of arriving at a mutually satisfactory replacement for such Article or Section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement, either party or both shall refer the subject matter to Arbitration as provided for herein.

ARTICLE XVIII
MISCELLANEOUS CONDITIONS

(a) Bereavement Clause: In the event of death in the immediate family of any employee in the bargaining unit, the Employee shall be permitted to be absent from work, from the date of death to the date of funeral, inclusive, and shall be paid for any scheduled working time lost by the affected Employee, up to a maximum of three (3) consecutive work days. Funeral leave shall not be hours worked for the purpose of computing overtime pay. Immediate family is defined as the mother, father, sister, brother, wife, husband, children, mother-in-law, or father-in-law of the employee. The Employer may request a death certificate as evidence of the death. Employees shall be paid one (1) day for the day of the funeral for grandparents and grandchildren.

(b) Court Appearance Clause: Any employee involved in any accident must immediately report said accident and any physical injury sustained. When required by his Employer, the employee before going off duty and before starting his next shift, shall make an accident report in writing on forms furnished by the Employer and shall turn in all available names and addresses of witnesses to the accident. Such report shall be made out on Company time. *Failure to carry out the provisions of Sub-Section (b) of the Article shall subject the employee to disciplinary action, including discharge.* When an employee is required to appear in any court for the purpose of testifying, because of any accident he may have been involved in while operating the Employer's vehicle during working hours, or because of defective and/or violations of State and Department of Transportation required equipment, such employee shall be reimbursed by the Employer for eight (8) hours pay, regardless of the weather that day. The Employer shall furnish the employee who is involved in said accident with bail bond and legal counsel, and shall pay in full for same. Said bail, bond and legal counsel shall remain in effect for the employee until all legal action in connection with said accident is concluded.

If, under the Employer's direction, the vehicle is overloaded and there is a resulting fine and suspension of license the Employer is liable for the fine and work opportunity lost. *If the overload is the result of the employee's action or negligence, then the employee shall be solely responsible for the fine imposed and shall not receive any compensation for work opportunity lost.*

(c) Physical Examination Clause: All examinations when required by law or regulatory body and performed under the Employer's direction shall be paid for by the Employer.

—9—

(d)     War Reopening Clause: In the event of war, declaration of a national emergency or imposition of economic controls by any federal authority during the life of this Agreement, the parties agree to reopen this Agreement for re-negotiation of matters dealing with wages, hours or other working conditions.

(e)     New Equipment Re-Opening Clause: If an Employer puts into use any new type of equipment for which rates of pay are not established by this Agreement, the rates for such equipment shall be negotiated by the parties hereto. Increase in carrying capacity shall not be considered as a new type of equipment.

(f)     There will be a ten (10) minute coffee break per shift.

(g)     Injury on the Job: When a regular employee is injured on the job, he shall be guaranteed eight (8) hours pay for the day injured, provided he is instructed to cease work as a result of an injury, by the Employer or his physician.

(h)     Paychecks shall be in an envelope.

(i)     Attenuator trucks are to be manned at all times by Teamsters for all hours.

### ARTICLE XIX

On all work bid on the Islands of Prudence, Patience and Block Island where an eight (8) hour day is worked, two (2) hours per traveling day, traveling time shall be paid at the single time rate to employees so employed if they travel by boat.

On all work bid the Employer mutually agrees that when it is necessary for the employees covered under this contract to work on Prudence, Patience and Block Island, the men shall receive room and board during the work week Monday thru Friday.

The amount for meals shall be thirty dollars ($30.00) per day, and the amount for sleeping accommodations shall not be less than the amount required to secure clean sanitary housing. No more that two (2) men shall be allowed in each such sleeping quarters.

"The Employer shall make all necessary and reasonable sleeping and eating accommodations for its employees who are required to travel overnight with a load out of state and pay for same. In the event the Employer fails to make arrangements, then the employee shall be reimbursed for meals, not to exceed thirty dollars ($30.00) per day and not to exceed seventy dollars ($70.00) per day for sleeping accommodations upon presentation of paid receipt."

### ARTICLE XX
### ARBITRATION and GRIEVANCE PROCEDURE

(a)     Grievance Procedure: All Grievances or disputes involving any controversy, dispute or misunderstanding arising as to the meaning, application or observance of any provisions of the Agreement shall be handled in the manner hereinafter set forth. It is agreed that all matters pertaining to the interpretation of this Agreement must be referred directly to the Rhode Island Heavy and Highway Construction Joint Committee provided that if a grievance has not been filed, the matter shall not be a subject of arbitration until a grievance is filed.

Step 1:     All grievances must be made known in writing to the other party within seven (7) days after the reason for such grievance has occurred. The aggrieved employee's or employees' shop steward or another authorized representative of the Union shall first submit a written grievance to the job superintendent, or his duly authorized representative. The shop steward or another authorized representative of the Union of the employee or the employees involved shall be present at any meeting between the job superintendent and such employee or employees. The job superintendent or his duly authorized representative must make a written disposition of the matter within twenty-four (24) hours after the submission of such written grievance thereto.

Step 2:     If the disposition of the matter by the job superintendent or his duly authorized representative is not

satisfactory, the matter must be taken up by the Business Agent, and representative of the Employer with authority to act, within forty-eight (48) hours of the written disposition set forth in Step 1, unless a reasonable time extension thereof is requested by either side.

*Step 3:* If the disposition of the matter in Step 2 is not satisfactory, either party has a right to file its grievances with the Joint Committee referred to in Section B of this Article within seventy-two (72) hours after Step 2.

(b) The Union and the several Employers who are signators to this shall together establish for the duration of this Agreement a Joint Committee to be known as the "Rhode Island Heavy and Highway Construction Joint Committee." All meetings of the Joint Committee must be attended by each member or his alternate, but the absence of any member or alternate shall not invalidate the action of the members of the Joint Committee who are present. The Joint Committee shall consist of two (2) representatives of the Employers, the Associations Secretary and a member of the Board of Construction Industries of Rhode Island who is a signator to this agreement, and two (2) representatives of the Union, its Business Representative and one other representative of his choice. The parties in the Joint Committee shall have equal power, regardless of the number on each side.

It shall be the function of the Joint Committee to settle disputes and grievances which cannot be settled in accordance with Steps 1, 2 and 3 of the grievance procedure. The committee shall meet the second Thursday of each month unless there are no request for arbitration pending. Both parties are entitled to no more than one postponement each, and a decision must be rendered in writing within 10 days of the Hearing.

A decision by a majority of the Joint Committee shall be final and binding on the parties and the employees involved. Failure of either party involved to comply with any final decision of or to submit to the jurisdiction of the Joint Committee shall give the other party the immediate right to all legal and economic recourse.

(c) Rights of the Joint Committee: The Rhode Island Heavy and Highway Construction Joint Committee shall have the right to investigate all facts pertaining to the dispute. The Joint Committee, as well as the Local Unions' business agents and/or stewards, shall, upon each dispute or grievance processed in accordance with this Article, have the right to examine time sheets and any other records pertaining to the computation of compensation of any individual or individuals whose pay is in dispute. Both parties shall be entitled to present such evidence and witnesses in support of their position as they see fit.

(d)     Arbitration: If any grievance or dispute cannot be satisfactorily settled by a majority decision of the panel of the Joint Committee, within ten (10) days after disagreement, the matter shall be referred to the American Arbitration for a list of Arbitrators. The expense of the arbitrator selected or appointed shall be borne equally by the employer and the Union. In the event that the losing party fails to abide by the arbitrator's decision, or that either party refuses to submit to his jurisdiction, the other party shall have the right to immediately take all legal and economic recourse.

(e)     The arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under this Agreement. The arbitrator shall determine any question or arbitrability.

(f)     Violations concerning wages, hours, Pension and Health and Welfare payments shall not be subject to the grievance procedure. In such cases, the Union shall give three (3) working days notice to the Employer that the Union will withdraw its men from the Employer's service. If the Employer contends there is a question of fact regarding the alleged violation, he may file a grievance within the aforesaid three (3) working days, with a copy to the Local Union and a copy to the Association. When a grievance has been filed, there shall be no work stoppage pending resolution of the grievance pursuant to A, Step 3 and the subsequent provisions of this Article.

(g)     With regard to new equipment which is within the Teamster jurisdiction and with regard to equipment within Teamster jurisdiction and with regard to equipment within Teamster jurisdiction for which no wage rates appear herein, such wage rates shall be resolved pursuant to Article XX, Section A, Step 3 and the subsequent provisions appearing thereafter in this Article. There shall be no dead-lining of equipment or work stoppage pending resolution of the question, and the agreed upon rates shall be retroactive.

(h)     A grievance under Section C, Article XIV of this Agreement shall be processed directly and immediately

with the Joint Committee.

(i)  The administrative costs of the Joint Committee shall be borne equally by the Association and the Union. Non-association employers shall pay a service fee of One Hundred Dollars ($100.00) per dispute session to the Joint Committee, which fee shall be deposited in the Joint Committee Administrative Account subject to disbursement for committee business purposes by mutual agreement.

## ARTICLE XXI
## HEALTH SERVICES and INSURANCE PLAN

(a)  Commencing with the 1st day of April, 2000 and for the duration of the current Collective Bargaining Agreement and any renewals or extensions thereof, the Employer agrees to make payments to the Teamsters' Local Union No. 251 Health Services and Insurance Plan for each and every employee performing work within the scope of and/or covered by this Collective Bargaining Agreement, whether such employee is a regular, probationary, temporary, or casual employee, irrespective of his status as a member or non-member of the Local Union from the first hour of employment subject to this Collective Bargaining Agreement as follows:

(b) Commencing on the 1st day of April, 2000, and until March 30, 2001, the Employer shall contribute to the Teamsters' Local Union No. 251 Health Services and Insurance Plan, the sum of four dollars and one and one quarter ($4.01.25 ) cents per hour for each hour for which an employee receives pay, figured to the nearest quarter hour, up to a maximum of 40 hours but not more than $160.50. An overtime hour shall be considered as a single contribution hour.

Commencing with the 1st day of April, 2001, and until March 30, 2002, the Employer shall contribute to the Teamsters' Local Union No. 251 Health Services and Insurance Plan, the sum of four dollars and twenty-six and one quarter ($4.26.25) per hour for each hour for which an employee receives pay, figured to the nearest quarter hour, up to a maximum of 40 hours but not more than $170.50.

Commencing with the 1st day of April, 2002, and until March 30, 2003, the Employer shall contribute to the Teamsters' Local Union No. 251 Health Services and Insurance Plan, the sum of four dollars and forty-six and one quarter ($4.46.25) per hour for each hour for which an employee receives pay, figured to the nearest quarter hour, up to a maximum of 40 hours but not more than $178.50.

Commencing with the 1st day of April, 2003, and until April 30, 2003, the Employer shall contribute to the Teamsters' Local Union No. 251 Health Services and Insurance Plan, the sum of whatever is negotiated in the National Master Freight Agreement per hour for each hour for which an employee receives pay, figured to the nearest quarter hour, up to a maximum of 40 hours but not more than what is negotiated per week. An overtime hour shall be considered as a single contribution hour.

For purposes of this Article, each hour paid for or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is received by the employee shall be counted as hours for which contributions are payable.

If an employee is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions of forty (40) hours per week for a period of not more than four (4) weeks. If an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work, provided however, such contributions shall be forty (40) hours per week and shall not be paid for a period of more than twelve (12) months.

Hourly contributions to the Health Services and Insurance Plan must be made for each hour worked on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and although contributions may be made for those weeks into some other Health Services and Insurance Plan.

All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the

-12-

Employer for the purpose of determining the accuracy of contributions to the Health Services and Insurance Plan.

If an Employer fails to make contributions to the Health Services and Insurance Plan within 72 hours after a notice of delinquency, the Local Union shall take whatever steps are necessary to secure compliance with this Article, any provisions of this Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such penalties which may be assessed by the Trustees. The Employer's liability for Payment hereunder shall not be subject to the Grievance Procedure or arbitration provided under this Agreement.

(c)    The Employers and Union which are signator hereto ratify the designation of the Employer and the Employee Trustees under such Agreement, and ratify all action already taken, or to be taken by such Trustees within the scope of their authority.

The Employer shall continue to make contributions on any employee who has worked one hundred (100) days in the calendar year and is laid-off in the winter season. The contributions shall commence immediately upon winter lay-off and shall be for forty (40) hours per week for a period of three (3) months regardless if the employee should work one, two, or three (3) days per week after seasonal lay-off. Example, if an Employee is laid off in December, and should be recalled for one day in January, the Employer will still continue to contribute forty (40) hours for that week, or otherwise contribute thirty-two (32) hours plus eight (8) hours actually worked.

## ARTICLE XXII
## PENSION FUND

This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.

(a)    Commencing with the 1st day of May, 2000, and for the duration of the current Collective Bargaining Agreement between Local Union No. 251 and the Employer, and any renewals or extension thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this Collective Bargaining Agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or nonmember of the Local Union, from the first hour of employment subject to this Collective Bargaining Agreement as follows:

Commencing on the 1st day of May, 2000, for each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, up to a maximum of 2080 hours for each calendar year, the Employer shall make a contribution of three dollars and ninety-one ($3.91) cents per hour for all hours to the New England Teamsters and Trucking Industry Pension Fund and overtime hours shall be considered as single contribution hours.

Commencing on the 1st day of May, 2001, for each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, up to a maximum of 2080 hours for each calendar year, the Employer shall make a contribution of four dollars and six ($4.06) cents per hour for all hours to the New England Teamsters and Trucking Industry Pension Fund and overtime hours shall be considered as single contribution hours.

Commencing on the 1st day of May, 2002, for each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, up to a maximum of 2080 hours for each calendar year, the Employer shall make a contribution of four dollars and twenty-one ($4.21) cents per hour for all hours to the New England Teamsters and Trucking Industry Pension Fund and overtime hours shall be considered as single contribution hours.

For purposes of this section, each hour for which wages are paid or due, or and portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable. In computing the maximum amount due any week, there shall be no daily limit on the number of hours for any one day in such week

-13-

whether such hours are performed on straight time or overtime rates, but payments shall be made at the amount set forth above.

If an employee as defined in section (a) is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions of forty (40) hours per week for a period of not more than four (4) weeks. If an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work, provided, however, such contributions shall be forty (40) hours per week and shall not be paid for a period of more than twelve (12) months.

(b)    The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust dated April 11, 1958, and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

(c)    The parties agree that the Pension Plan adopted by the Trustees of the New England Teamsters and Trucking Industry Pension Fund shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Fund as a deduction for income tax purposes.

(d)    It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this Collective Bargaining Agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the Collective Bargaining Agreement regarding coverage and contributions; such audit may, at the option of the Trustees, be conducted by an independent certified public accountant or a certified public accountant employed by the New England Teamsters and Trucking Industry Pension Fund.

If the Employer shall fail to make contributions to the Pension Fund by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this Collective Bargaining Agreement, up to and including the last completed payroll period in the month for which contributions must be paid, or if the Employer having been notified that its contributions to the Fund have been under reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate seventy-two (72) hours notice to the Employer, to take whatever steps it deems necessary to secure compliance with this Agreement, any provision of this Collective Bargaining Agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the Grievance Procedure and/or Arbitration if such is provided in this Agreement.

It is understood and agreed that once a payment or payments are referred to an attorney or collection by the Trustees of the New England Teamsters and Trucking Industry Pension Fund and/or the Local Union, the Local Union and its business agents or chief executive officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

(e)    No oral or written modification of this section regarding pensions and retirement shall be made by the Local Union or the Employer, and, if made, such modification shall not be binding upon the employees performing work within the scope of this Collective Bargaining Agreement and covered by this section or upon the Trustees of the New England Teamsters and Trucking Industry Pension Fund.

ARTICLE XXIII
INDUSTRY ADVANCEMENT PROGRAM

Section 1: The parties hereby agree that each Employer who has entered into the terms of this Agreement, by virtue

of the execution hereof by himself or an association having his authorization therefor shall contribute fifteen (15) cents for each hour worked by an employee under the terms of this Agreement to a fund known as "Construction Industries of Rhode Island Industry Advancement Fund". The Fund shall be administered by a Board of Trustees, not more than five (5) in number, all appointed by the Construction Industries of Rhode Island, Inc. Contributions to the Fund shall be deductible by the Employers as an ordinary business expense and the contributions to the Fund and the earnings thereon shall be exempt from taxation as contributions to a tax exempt organization under Internal Revenue Code Section 501 (c) (6).

Section 2: The Fund shall be under the exclusive Management of such Trustees who shall operate the Fund under the terms of a Trust and Plan executed by the Construction Industries of Rhode Island, Inc. and the Trustees.

Section 3: The Trust Fund shall be used for the following purpose: The promotion of safety and accident prevention in the construction industry; conducting or promoting educational programs such as schools or superintendents of construction and other supervisory and management personnel; paying the cost of standardizing contracts and specifications; setting up machinery to bring about cooperation among owners, architects, engineers, contractors, subcontractors, material suppliers, surety and insurance interests, public agencies, and other construction industry groups and organizations to eliminate disputes and disagreements; conducting or sponsoring research into new methods and new materials for use in the construction industry; paying the expenses involved in conducting public relations and market development programs for the benefit of contractors engaged in the construction industry in Rhode Island; paying the expenses attendance to the promotion of stability of relations between labor and management; paying the expenses incurred by management in connection with collective bargaining on an industry-wide basis for the benefit of the construction contractors engaged in construction in Rhode Island; paying the expenses required to develop and maintain facilities for arbitration of disputes and the adjustment of grievances; conducting or promoting programs to insure a sufficiency of skilled employees in all crafts for construction contractors in Rhode Island; Providing contributors with information and data relating to the construction industry in the matters mentioned herein; paying the costs of administration of the Fund; paying the expenses incurred in the collection of contributions for the Fund; and such other industry-wide endeavors of like character or kind as may be desirable from time to time as the Trustees shall decide.

Section 4: The Trust Fund shall not be used by the Trustees for any of the following purposes which are expressly prohibited uses or purposes:

(a)     Lobbying in support of anti-union legislation supporting litigation before a court or any administrative body against any union or any of its agents.

(b)     Subsidizing the business operation of Employers during a period or periods of work stoppages or strikes.

Section 5: The amounts payable by an Employer under this Article shall be paid into said Fund as directed by the Trustees. All monthly checks will be a separate check and shall be forwarded to the Teamsters Local 251 Health Services and Insurance Fund office at the same time the company remits their regular monthly Health services remittance check.

Section 6: Employers who are adjudged delinquent by the Fund Trustees in their payments to the Fund shall be subject to the remedies available for delinquency as in other Trust herein. The Local Union, after written notification from the Association will send the appropriate seventy-two (72) hour notice and take whatever steps it deems necessary to secure compliance, any provisions of this agreement to the contrary notwithstanding.

ARTICLE XXIV
DRIVE DEDUCTION

The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to DRIVE National Headquarters on a monthly basis, in one check the total amount deducted along with

the name of each employee on whose behalf a deduction is made, the employee's Social Security number and the amount deducted from the employee's paycheck.

## ARTICLE XXV
## UNIFIED TRUST FUND

It is hereby agreed that parties signator to this Agreement shall pay to the Trustees of the Labor Management Unified Trust Fund the following contribution per hour for the total gross hourly wage paid to each employee weekly by said Employer. Such monies shall be paid to the Trustees no later than the twentieth (20th) of the month for which the contribution is being made; however, in the case of operations of less than a month's duration, payments shall be due weekly.

The contribution shall be .50 cents per hour for all hours.

If an Employer fails to make contributions to the Fund within 72 hours after a notice of delinquency, the Local Union shall take whatever steps are necessary to secure compliance with this Article; any provisions of this Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such penalties which may be assessed. The Employer's liability for payment hereunder shall not be subject to the Grievance Procedure or arbitration provided under this Agreement.

## ARTICLE XXVI
## TEAMSTERS' LOCAL 251 TRAINING FUND

It is hereby agreed that parties signator to this Agreement shall pay to the Teamsters' Local 251 Training Fund the following contribution per hour for the total gross hourly wage paid to each employee weekly by said Employer. Such monies shall be paid no later than the twentieth (20th) of the month for which contribution is being made; however, in the case of operations of less than a month's duration, payments shall be due weekly.

The contribution shall be .10 cents over the life of the Agreement.

If an Employer fails to make contributions to the Fund within 72 hours after a notice of delinquency, the Local Union shall take whatever steps are necessary to secure compliance with this Article, any provisions of this Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such penalties which may be assessed. The Employer's liability for payment hereunder shall not be subject to the Grievance Procedure or arbitration provided under this Agreement.

## ARTICLE XXVII
## RETROACTIVE

All retroactive wages and fringe benefits must be paid within thirty (30) days of the signing of this Agreement.

## ARTICLE XXVIII
## TERMINATION

This Agreement shall take effect on May 1st, 2000 and shall continue in full force and effect until April 30, 2003, and shall then renew itself from year to year unless either party to the agreement gives written notice to the other party at least sixty (60) days prior to the expiration of this Agreement of a desire to change or amend this Agreement.

Tunnel rates for trucks actually going underground - add forty (40) cents per hour to rate according to equipment. On equipment used to haul power - add twenty-five (25) cents above rate according to axle.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their duly authorized representatives and have affixed hereto the seals of their respective organizations the day and year first written above.

FOR THE COMPANY:

_Stamprete of R.I._
Company Name (Please print)

_45 Irons Ave_
Street

_Johnston RI 02919_
City, State, Zip

_231-6014_
Telephone number

_[signature]_
Signature

FOR THE UNION:

Teamsters Local Union No. 251

_[signature]_
Joseph J. Bairos, President &
Business Agent

CONSTRUCTION INDUSTRIES OF
RHODE ISLAND

_[signature]_
Michael Gammino, President

c:hhwy3.wpd

SCHEDULE "A"

| FROM:<br>TO: | 5/1/00<br>4/30/01 | 5/1/01<br>4/30/02 | 5/1/02<br>4/30/03 |
|---|---|---|---|
| Pick-up trucks, station wagons and panel trucks | $18.81 | $19.81 | $20.51 |
| Two axle, helpers on low beds, etc. | $18.96 | $19.96 | $20.66 |
| Two axle dump truck | $19.01 | $20.01 | $20.71 |
| Three axle dump truck | $19.06 | $20.06 | $20.76 |
| Four and Five Axle | $19.16 | $20.16 | $20.86 |
| Tractor-Trailers | $19.31 | $20.31 | $21.01 |
| Low Bed Trailers/Boom Trailers | $19.56 | $20.56 | $21.26 |
| Special Earth Moving equipment under 35 tons | $19.26 | $20.26 | $20.96 |
| Special Earth Moving 35 tons or over | $19.51 | $20.51 | $21.21 |
| Trailers when used on a double hook-up (pulling 2 trailers) | $19.76 | $20.76 | $21.46 |

RECEIVED
MAR -7 2003
PENSION FUND

# New England Teamsters and Trucking Industry Pension Fund

**RESTATED AGREEMENT & DECLARATION OF TRUST**

REPRINTED AND RESTATED AS OF JANUARY 26, 1994


DEPOSITION EXHIBIT

# RESTATED AGREEMENT AND
# DECLARATION OF TRUST

## New England Teamsters and Trucking Industry
## Pension Fund

This original Agreement and Declaration of Trust was made and entered into as of the eleventh day of April, 1958 in the City of Waterbury, State of Connecticut, by and between various Employers who were or are presently parties to this Agreement, hereinafter referred to as "Employers," and the various local unions and such other local unions who were or are presently parties to this agreement, hereinafter referred to as the "Unions."

### WITNESSETH THAT:

WHEREAS, various employers and Unions affiliated with the International Brotherhood of Teamsters have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a pension fund and prescribe the contributions or payments to be made by the Employers to such fund, and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a pension fund as a trust fund for receiving contributions and providing benefits for eligible employees, and

WHEREAS, the said trust fund is to be known as the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND, and

WHEREAS, it is desired to set forth the terms and conditions under which the said fund is to be established and administered, and

WHEREAS, it is mutually agreed that the fund shall be administered by trustees and it is desired to define the powers and duties of the trustees and the nature of the benefits to be provided, and

WHEREAS, with the enactment of the Employee Retirement Income Security Act of 1974 and the Multiemployer Pension Plan Amendments Act of 1980, and as further amended, the Trustees of said Fund deem it advisable to revise and update the terms of said Trust Agreement and also to restate the terms of said Agreement and Declaration of Trust in a single document, including all amendments to date,

NOW, THEREFORE, in consideration of the premises, it is mutually understood and agreed as follows:

## ARTICLE I
## DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

Section 1. EMPLOYER. The term "Employer" as used herein shall mean, and is limited to, such person or organization which is now a party to or hereafter becomes a party to the New England Freight Agreement which requires periodic contributions to the Pension Fund created by this Trust Agreement, and which adopts and agrees in writing to be bound by the party to the New England Freight Agreement and also shall mean and include any other person or organization which shall enter into a Collective Bargaining Agreement with a Local Union bound by the terms and provisions of this Trust Agreement, provided the inclusion of any such person or organization does not affect the actuarial soundness of the Pension Plan as determined by the Trustees upon recommendation by the actuaries for the Pension Fund.

The term "Employer" shall also include for its respective full time salaried employees, each Local Union, Joint Council, Teamster affiliated Credit Unions, Teamster affiliated Health and Insurance Plans or Welfare Funds, the New England Teamsters and Trucking Industry Pension Fund, and any association or organization of employers composed of contributing employers to this Fund, however named or described, including but not limited to the Northeast Employers' Association, Inc. and any other related or affiliated group or entity which the Board of Trustees may hereinafter approve for participation.

Section 2. EMPLOYEE. An "Employee" shall be any person covered by a collective bargaining agreement between an Employer and a Local Union and any full time salaried employee of an employer as defined in Section 1, 2nd paragraph herein.

Section 3. INTERNATIONAL UNION. The term "International Union" as used herein shall mean the International Brotherhood of Teamsters.

Section 4. LOCAL UNION OR UNIONS. The terms "Local Union" or "Unions" as used herein shall mean any local union affiliated with the International Union which is a party to the New England Freight Agreement and to this Trust Agreement and any other local union affiliated with the International Union which is accepted by the Trustees as a party to this Trust Agreement which then becomes a party to this Trust Agreement.

## ARTICLE I, cont.
## DEFINITIONS

Section 5. TRUSTEES.

(a) The term "Employer Trustees" as used herein shall mean the Trustees appointed by the Employer subject to this Agreement and Declaration of Trust.

(b) The term "Union Trustees" as used herein shall mean the Trustees appointed by the Local Unions provided such Trustees are duly-elected officers and/or Business Agents of one of the signatory Local Unions.

(c) The term "Trustees" as used herein shall mean the Employer Trustees and Union Trustees collectively, and shall include their successors when acting as Trustees.

Section 6. AGREEMENT AND DECLARATION OF TRUST OR TRUST AGREEMENT. The term "Agreement and Declaration of Trust" or "Trust Agreement" as used herein shall mean this instrument including any amendments hereto and modifications hereof.

Section 7. PLAN. The term "Plan" as used herein shall mean the program of pension and retirement benefits to be established by the Trustees pursuant to this Trust Agreement.

Section 8. FUND. The term "Fund" as used herein shall mean the New England Teamsters and Trucking Industry Pension Fund, the trust fund created pursuant to this Trust Agreement, and shall mean generally the monies or other things of value which comprise the corpus and additions to the trust fund.

Section 9. CONTRIBUTIONS. The term "Contributions" as used herein shall mean the payments paid or payable to the Fund by the Employers.

Section 10. BENEFITS. The term "Benefits" shall mean the pension benefits to be provided pursuant to the Plan.

Section 11. COLLECTIVE BARGAINING AGREEMENT. The term "Collective Bargaining Agreement" as used herein shall mean a collective bargaining agreement in force and effect between a Local Union and an Employer, together with any modifications or amendments thereto, which provides for contributions to be made to the Fund created by this Trust Agreement and includes the New England Freight Agreement, and any renewal, modification, amendment thereof or successor agreement thereto.

Section 12. NEW ENGLAND FREIGHT AGREEMENT. The term "New England Freight Agreement" as used herein shall mean a collective bargaining agreement entered into by the signatory Employers and the Local Unions which, as the effective date hereof, is designated as "New England Freight Amendment 1958-1961" or any renewal or extension thereof excluding a document designated or described as the New England Supplemental Freight Agreement.

Section 13. HEALTH AND INSURANCE FUND. The term "Health and Insurance Fund" as used herein shall mean any trust fund established pursuant to a labor agreement with a Local Union which provides health and insurance benefits under a written plan to eligible employees and employers. Each such trust fund first must be accepted by the Trustees as a "Health and Insurance Fund" and become a party to this Trust Agreement in the form and manner prescribed by the Trustees. This term shall also include similar trust funds known and described as Welfare Funds.

## ARTICLE II
## GENERAL

Section 1. ESTABLISHMENT OF FUNDS. As hereby created, the New England Teamsters and Trucking Industry Pension Fund shall comprise the entire assets derived from Employer contributions made to or for the account of this Fund under collective bargaining agreements, together with any and all investments made and held by the Trustees, or monies received by the Trustees as contributions or as income from investments made and held by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trusts set forth in this Trust Agreement.

Section 2. GENERAL PURPOSE. The Fund shall be a trust fund and shall be used for the purpose of providing pension and retirement benefits, as decided by the Trustees, through self-insurance or otherwise, and shall further provide the means for the payment of the expenses of the Trustees and the establishment, operation and administration of the Fund, in accordance with this Trust Agreement, and administering the affairs of the Fund including, but without limitation, the expenses which may be incurred in connection with the establishment and maintenance of the Fund, the employment of administrative, legal, expert and actuarial services, the leasing or purchase of such premises and such materials, supplies and equipment as the Trustees in their discretion find necessary in the performance of their duties.

## ARTICLE III
## TRUSTEES

Section 1. TRUSTEES, EMPLOYER AND UNION TRUSTEES. The operation and administration of the Pension Fund shall be the joint responsibility of four (4) trustees appointed by the Employers and four (4) trustees appointed by the Local Unions, and at all times there shall be an equal number of Employer and Union Trustees. The original Trustees were:

(a) Employer Trustees
Harold F. Bergeron of Easton, Massachusetts, Philander Cooke of Wallingford, Connecticut, John J. Lane of Chevy Chase, Maryland, and John H. Welch of Arlington, Massachusetts.

(b) Union Trustees
Timothy M. Collins of Trumbull, Connecticut, Alexander J. Hylek of Cranston, Rhode Island, William J. McCarthy of Arlington, Massachusetts, and Fred J. Roberto of Fairfield, Connecticut.

Section 2. ACCEPTANCE OF TRUSTEESHIP. The Trustees, or any duly appointed successor Trustee, shall immediately meet and sign this Agreement and Declaration of Trust which establishes the Pension Fund. The Trustees by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and act in their capacities strictly in accordance with the provisions of this Agreement and Declaration of Trust.

Section 3. TERM OF TRUSTEES. Each Trustee above named, and each Successor Trustee, shall continue to serve as such until his death, incapacity, resignation or inability to serve because of termination of employment with an Employer or Union as required by Article I, Section 5.

Section 4. VACANCIES. If the term of a Trustee is terminated as hereinabove provided, his successor Trustee shall be appointed in the following manner, subject to the requirements of Article I, Section 5.

(a) If such Trustee is an Employer Trustee, his successor shall be appointed by the Northeast Employers' Association, Inc. or its successor organization.

(b) If such Trustee is a Union Trustee, his successor shall be appointed by a majority vote of the remaining Union Trustees, and provided further, that there shall be at all times at least one Trustee from each of the states of Connecticut and Massachusetts, and said Trustees shall at all times be duly elected officers or Business Agents of a signatory Local Union.

Section 5. FORM OF NOTIFICATION. In case any Trustee shall be succeeded, a statement in writing by the Chairman designated by the Employer Trustees and filed with the Fund at its principal office shall be sufficient evidence of the action taken by the Employers and a statement in writing signed by the Chairman designated by the Union Trustees and filed with the Fund at its principal office shall be deemed sufficient evidence of the action taken by the Unions. Any resignation by a Trustee shall be by written notification delivered to the principal office of the Fund.

Section 6. SUCCESSOR TRUSTEES. Any Successor Trustee shall immediately upon his designation as Successor Trustee and his acceptance in writing filed with the Trustees become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any entity appointed pursuant to Article IV, Section 3 of this Trust Agreement and all other necessary persons shall be notified immediately.

## ARTICLE IV
## POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

Section 1. PROPERTY AND ASSISTANCE. The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment counsel, administrative, accounting, actuarial, clerical and other assistants or employees, including former Trustees, as in their discretion they may find necessary or appropriate in the performance of their duties.

Section 2. CONSTRUCTION OF AGREEMENT. The Trustees shall have power to construe, with discretionary authority, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any construction adopted by the Trustees in good faith shall be binding upon the Unions, the Employers and the Employees and their families, dependents, beneficiaries and/or legal representatives.

Section 3. GENERAL POWERS. The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) To establish and administer a Pension Plan on behalf of the Employees and their beneficiaries referred to in this instrument or the Plan established hereunder.

(b) To enter and administer a Pension Plan on behalf of the Employees and their beneficiaries referred to in this instrument or the Plan established hereunder.

(c) To compromise, settle, arbitrate, and release claims or demands in favor of or against the Trust Fund or the Trustees on such terms and conditions as the Trustees may deem advisable.

## ARTICLE IV, cont.
## POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

(d) To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purposes of such Trust.

(e) To pay out of the Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof.

(f) To make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund.

(g) To receive contributions or payments from any source whatsoever to the extent permitted by law.

(h) To invest and reinvest the Pension Fund in any type of investments, including real estate and interests in real estate, which are deemed proper and reasonable under the prudent man investment rule and to take any and all action with respect to holding, buying, selling or maintaining such investments as the Trustees, in their sole discretion, may deem appropriate.

(i) To engage investment counselors or advisors, corporate trustees and corporate agents in such capacity and under which terms as are acceptable to the Trustees.

(j) To reconcile, determine, interpret and construe, with discretionary authority, any question or dispute arising in connection with definitions of terms, rights, status or classification of employees, or any other dispute or claim arising under the Plan including, but not limited to, the determination of the entitlement of any person to any pension or retirement benefits, or the existence, extent, cause and continuance of any person's claims to any disability or other benefits.

(k) To establish an escrow bank account or accounts to the extent deemed necessary in their discretion.

(l) To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objective of enabling the employees to obtain pension benefits in the most efficient and economical manner, and for the protection of the property held hereunder.

(m) To hold and manage such real estate and real estate interests in the name of a trust, corporation, or nominee, with or without a power of attorney for its transfer, as the Trustees may deem appropriate under the circumstances.

Section 4. COMPENSATION. The Union and Employer Trustees shall not receive compensation from the Fund for the performance of their duties.

Section 5. AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES. The Trustees are hereby given authority to enter into agreements with Trustees of other pension plans to which Local Unions affiliated with the International Brotherhood of Teamsters are parties to permit such other pension funds to join or merge with this Fund.

Section 6. PERSONAL LIABILITY. Neither the Trustees nor any individual or successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with the first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder; provided, however, that nothing herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties so long as they act in good faith and without gross negligence, nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers nor the Local Unions shall be in any way liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Fund's legal counsel and shall be fully protected in acting upon such advice of counsel to the Fund as respects legal questions.

Section 7. BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be available upon reasonable notice for inspection by signatories to this agreement at the principal office of the Fund.

Section 8. EXECUTION OF DOCUMENTS. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereon that such notice or instrument has been duly authorized and is binding on the Fund and the Trustees.